## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL WALKER, *et al.*,                :          Civil No. 3:20-cv-1608

        Plaintiffs                                 :          (Judge Mariani)

        v.                                               :

JOHN E. WETZEL, *et al.*,                  :

        Defendants                               :

FILED
SCRANTON
FEB 1 1 2022
Per_____
DEPUTY CLERK

### MEMORANDUM

Plaintiffs Michael Walker and Maurice Pearson (together, the "Plaintiffs"), inmates

confined at the State Correctional Institution at Huntingdon, Pennsylvania ("SCI-

Huntingdon"), commenced this action pursuant to 42 U.S.C. § 1983.[1]  (Doc. 1).  The matter

is proceeding *via* an amended complaint.  (Doc. 36).  Plaintiffs allege that Defendants

violated the Eighth Amendment in responding to the COVID-19 pandemic.  Named as

Defendants are John Wetzel, Kevin Kauffman, J. Kohler, Jill Spyker, Scott Walters, W.

House, C. Loy, Paula Price, A. Scalia, George Ralston, M. Yost, G. Powell, and Mr. Houp.

Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of

---

[1]    When Plaintiffs filed the original complaint, they also filed a motion for preliminary injunctive
relief. (Doc. 6).  By Order dated August 30, 2021, the Court denied Plaintiffs' motion.  (Doc. 58).  On
December 2, 2021, the United States Court of Appeals for the Third Circuit affirmed this Court's August 30,
2021 Order. (*See* Docs. 68, 70, *Walker, et al. v. Pa. Dep't of Corr.*, No. 21-2756 (3d Cir. Dec. 2, 2021)).
The Third Circuit noted that the complaint and motion for preliminary injunction sought the same injunctive
relief: "a declaration that the housing conditions at SCI-Huntingdon violate the Eighth Amendment, and an
order compelling the DOC and prison administrators to alter their health and safety protocols and to
renovate SCI-Huntingdon." (Doc. 70-1, p. 4).  The Court of Appeals found that these requests were outside
the scope of a preliminary injunction. (*Id.*).

Civil Procedure 12(b)(6).  (Doc. 52).  The motion is fully briefed and ripe for resolution.  For

the reasons set forth below, the Court will grant the motion.

I.   **Background**

   A.   **Allegations of the Amended Complaint**

   Plaintiffs allege that Defendants violated the Eighth Amendment by failing to provide

adequate living conditions at SCI-Huntingdon which has enhanced the spread of COVID-19

throughout the institution.  (Doc. 36).  Plaintiffs further allege a deprivation of their Eighth

Amendment right to receive adequate medical care.  (*Id.*).

   Specifically, Plaintiffs allege that SCI-Huntingdon is an old facility that "lacks proper

or adequate maintenance and modernization," which creates inadequate and unsafe living

conditions.  (*Id.* at p. 9).  Due to the antiquated condition of SCI-Huntingdon, Plaintiffs allege

that the facility does not allow for proper COVID-19 prevention procedures, resulting in

insufficient social distancing, poor ventilation, and inadequate personal hygiene facilities.

(*Id.* at pp. 9-13).

   Plaintiff Walker alleges that his housing unit was placed in quarantine from April 24,

2020 through May 26, 2020.  (*Id.* at p. 16).  During this time, Walker avers that he remained

in his cells for twenty-four (24) hours a day, and reported feelings of headaches, chills, loss

of smell and taste, gastrointestinal symptoms, fatigue, weakness, and body aches and

pains.  (*Id.* at pp. 16-17).  He asserts that some of these conditions subsided, but he began

to experience additional symptoms of coughing, fever, nausea, difficulty breathing, and a

sore throat. (*Id.* at pp. 18-19). Walker contends that he filed sick call requests, but staff failed to help. (*Id.* at pp. 17-18). On July 8, 2020, Walker was treated in the medical department. (*Id.* at p. 19). He was advised that he likely contracted the COVID-19 virus, he appeared to have recovered from the virus, and he was prescribed Tylenol. (*Id.*). Walker was subsequently prescribed various medications and an underwent x-rays of his chest and stomach. (*Id.*). The x-ray results were negative. (*Id.*). He alleges that he continues to experience effects of COVID-19. (*Id.* at pp. 19, 32).

Plaintiff Pearson alleges that his housing unit was placed in quarantine from April 24, 2020 through May 26, 2020, and he was confined to his cell for twenty-four (24) hours a day. (*Id.* at p. 20). Pearson alleges that two different inmates were placed in his cell without proper screening for COVID-19. (*Id.* at pp. 20-21). From May 22, 2020 through May 23 or May 24, 2020, Pearson reported feelings of shortness of breath, fever, nausea, coughing, sore throat, headaches, and loss of taste and small. (*Id.* at pp. 21-22). Pearson was examined by medical staff, the examination was "normal," and he underwent a COVID test. (*Id.* at p. 22). On May 28, 2020, medical staff advised Pearson that he tested positive for COVID-19. (*Id.*). Pearson was then moved to the gymnasium at SCI-Huntingdon to be placed in isolation and undergo monitoring. (*Id.* at p. 23). He alleges that the gymnasium was "filthy," there was flooding on the floor, there was only one toilet available for the inmates, the hot and cold water was inadequate, there were inadequate cleaning supplies, and an inadequate amount of clothes and personal hygiene products. (*Id.* at pp. 23-24).

On June 2, 2020, Pearson returned to general population without proper screening. (*Id.* at p. 24). Pearson alleges that he continues to experience long-term effects of COVID-19. (*Id.* at pp. 24-25, 32).

Plaintiffs allege that Defendants were aware of the conditions at SCI-Huntingdon, failed to take any steps to rectify them, and failed to provide adequate medical care when Plaintiffs complained of symptoms related to COVID-19. (*Id.* at pp. 26-32). For relief, Plaintiffs seek compensatory and punitive damages, as well as injunctive relief. (*Id.* at p. 34-35).

### B.   Summary of the DOC's Response to COVID-19

The DOC has provided publicly available information regarding its response to the COVID-19 pandemic. *See* COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed Feb. 11, 2022). In-person visitation has been suspended since March 13, 2020. *Id.* Visitation resumed at select facilities in May 2021. *Id.* However, in-person visitation was again suspended at all state correctional institutions from January 27, 2022 through February 28, 2022 due to the surge of COVID-19 cases throughout the state. *See* Inmate Visitation, https://www.cor.pa.gov/family-and-friends/Pages/Inmate-Visitation.aspx (last accessed Feb. 11, 2022).

The DOC has taken the following preventative measures in correctional facilities: suspension of in-person visitation when necessary, expansion of video visitation, enhanced

4

screening and quarantine for new inmates, universal masking, increased availability of

cleaning supplies, reduced cohort size, and new zoning requirements to prevent the spread

of COVID-19.  *See* COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx

(last accessed Feb. 11, 2022).  Additionally, the DOC has undertaken the following

mitigation efforts with respect to inmates: suspension of in-person visitation when

necessary, expansion of video visitation, enhanced screening and quarantine for new

inmates, universal masking, increased availability of cleaning supplies, reduced cohort size

and new zoning requirements to prevent the spread of COVID-19.  *Id.*  With respect to staff

members, all facilities conduct "[e]nhanced screening and temperature checks for all

individuals entering a facility."  *Id.*  There is a universal masking policy for staff and personal

protective equipment is provided to all staff.  *Id.*

As of February 11, 2022, there are 9 active inmate cases of COVID-19 at SCI-

Huntingdon.  *Id.* (select "COVID-19 Dashboard" hyperlink and search for SCI-Huntingdon).

There have been 422 inmate cases overall, with 9 deaths.  *Id.*  3,049 inmates have been

tested.  *Id.*  As of February 11, 2022, there are 10 active staff cases, with 437 cumulative

staff cases.  *Id.*

DOC officials have also reduced the inmate population where they can by

maximizing parole releases, reviewing parole detainers for individuals in county jails and

state prisons, expediting the release process for anyone with a pending home plan, and

reviewing inmates who are beyond their minimum sentences. *See* COVID-19 and the DOC,

https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed Feb. 11, 2022).

The DOC represents that on-site vaccination is available to the inmate population

and staff at every state correctional institution in Pennsylvania and COVID-19 boosters are

available to inmates and staff. *Id.*

The DOC's demobilization plan addresses various aspects of inmate life, guided by

the governor's statewide reopening plans. *See*

https://www.media.pa.gov/pages/corrections_details.aspx?newsid=463 (last accessed Feb.

11, 2022). Facilities move through the different levels of quarantine depending on the

number of positive cases of COVID-19 at the prison at the time. *Id.*

## II.   Legal Standards

### A.   Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must

aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

6

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555).  In other words,

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements."  *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

7

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## B.   Section 1983 Standard

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the

Constitution or laws of the United States.  *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d

185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   Discussion

Defendants move to dismiss the amended complaint on the following grounds: (1)

Plaintiffs failed to allege that the prison conditions at SCI-Huntingdon amount to deliberate

indifference; (2) Plaintiffs failed to allege an Eighth Amendment inadequate medical care

claim; and (3) Plaintiffs are barred from pursuing this action pursuant to the doctrine of *res*

*judicata*.  (Doc. 53).  The Court will proceed by addressing the threshold question of whether

Plaintiffs are barred from relitigating their claims based on the doctrine of *res judicata*.

### A.   Res Judicata

The doctrine of *res judicata* precludes a party from relitigating the same claims

against the same parties after those claims have already been decided on the merits.  *See*

*Chen v. Fairfield Twp.*, 354 F. App'x 656, 658 (3d Cir. 2009).  The following three (3)

elements must be met for the doctrine to apply: (1) a final judgment on the merits must have

been rendered in a prior suit; (2) the same parties or their privies must have been involved

in both suits; and (3) the subsequent suit must be based on the same cause of action as the

original.  *See Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991).  Likewise, in

Pennsylvania:

> Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the
> merits by a court of competent jurisdiction will bar any future action on the
> same cause of action between the parties and their privies.  The doctrine
> therefore forbids further litigation on all matters which might have been raised

and decided in the former suit, as well as those which were actually raised
therein.  Similarly, [t]he doctrine of collateral estoppel or issue preclusion
prevents a question of law or an issue of fact that has once been litigated and
fully adjudicated in a court of competent jurisdiction from being relitigated in a
subsequent suit.

*Mariner Chestner Partners, L.P. v. Lenfest*, 152 A.3d 265, 286 (Pa. Super. 2016) (internal

citations and quotation marks omitted).  *Res judicata* may be raised in a motion to dismiss

when its applicability is apparent on the face of the complaint.  *See Rycoline Prods., Inc. v.*

*C&W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997).

In the instant case, the first element set forth above exists.  Plaintiffs previously filed

suit under 42 U.S.C. § 1983 in the Court of Common Pleas of Huntingdon County,

Pennsylvania.  (Doc. 53-1, pp. 5-45, *Walker, et al. v. PA DOC, et al.*, CP-31-CV-945-2020).

In their previously filed state court case, Plaintiffs alleged violations of their right to be free

from cruel and usual punishment under the Eighth Amendment and the Pennsylvania

Constitution.  (*Id.*).  Plaintiffs alleged that they were exposed to the COVID-19 virus at SCI-

Huntingdon, contracted COVID-19, the facility did not have proper safety precautions

against the virus, and they received inadequate medical care.  (*Id.*).  The state court

dismissed the complaint as frivolous pursuant to Pennsylvania Rule of Civil Procedure

240(j)(1), as it lacked an arguable basis in law or fact and did not set forth a valid cause of

action.  (*Id.* at pp. 2-4).  Plaintiffs argue that their prior state court action "was not 'actually

litigated' and adjudicated on the merits," seemingly because the state court dismissed the

action as frivolous.  (Doc. 57, pp. 25-32).  It is well-settled that a "[d]ismissal for failure to

state a claim is a final judgment on the merits for *res judicata* purposes." *Post v. Hartford*

*Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007).  By dismissing Plaintiff's complaint as frivolous,

the state court entered a final judgment on the merits in Plaintiffs' prior suit.  *See Porter v.*

*Cancelmi*, 318 F. App'x 48, 50 n.2 (3d Cir. 2008) (dismissal of an *in forma pauperis*

complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii) constitutes a final

judgment on the merits); *Garland v. Knorr*, Civ. A. No. 19-2996, 2020 WL 3034811, at *12

(E.D. Pa. June 5, 2020) (dismissal of plaintiff's state court action under Rule 240(j) was a

final judgment on the merits for purposes of *res judicata*).  Thus, the first factor is satisfied.

With respect to the second factor, the Third Circuit has explained privity to be

"merely a word used to say that the relationship between one who is a party on the record

and another is close enough to include that other within the *res judicata*." *Marran v. Marran*,

376 F.3d 143, 151 (3d Cir. 2004) (quoting *EEOC v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d

Cir. 1990)); *see also Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999) (noting that

the doctrine prohibits successive suits against the same defendants and those in privity with

them based on the same underlying events).  In the instant case, the second factor is

clearly satisfied with respect to Defendants Wetzel, Kauffman, Kohler, Walters, Spyker,

Price, Scalia, Powell, and Houp because Plaintiffs named them as Defendants in their prior

suit and in the above-captioned case.  With respect to Defendants Loy, Ralston, Yost, and

House, Plaintiffs did not name them in their prior state court action.  Here, Plaintiffs allege

that Defendants Loy, Ralston, and Yost, are unit managers and report to Defendant

Kauffman.  (Doc. 36 at 7-8).  As to Defendant House, Plaintiffs presently allege that he is a major and oversees the officers at SCI-Huntingdon.  (*Id.* at 7).  Such supervisor-subordinate relationships are sufficient to establish privity between Defendants Wetzel, Kauffman, Kohler, Walters, Spyker, Price, Scalia, Powell, and Houp and Defendants Loy, Ralston, Yost, and House.  Thus, Defendants Loy, Ralston, Yost, and House had a sufficiently close relationship to the previously named Defendants to justify preclusion.  *Bruszewski v. United States,* 181 F.2d 419, 423 (3d Cir.), *cert. denied,* 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950) (noting that the test for privity is whether there is a sufficiently close relationship between the party to the prior litigation and the nonparty against whom the prior judgment is being used); *see also West v. Coupe*, No. 14-1252-SLR, 2014 WL 6784319, at *3 (D. Del. Nov. 30, 2014) (dismissing *pro se* prisoner's § 1983 complaint as barred by *res judicata* and noting that "the addition of new defendants to those plaintiff named before does not change this conclusion because they are all prison officials or medical personnel in privity with one another").

With respect to the third factor, courts "take a 'broad view' of what constitutes the same cause of action."  *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 261 (3d Cir. 2010)). Moreover, a *res judicata* analysis "does not depend on the specific theory invoked, but rather [on] 'the essential similarity of the underlying events giving rise to the various legal claims.'"  *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (quoting *Davis*

*v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982)).  In determining whether the third

factor is met for purposes of *res judicata*, courts consider the following: "(1) whether the acts

complained of and the demand for relief are the same . . .; (2) whether the theory of

recovery is the same; (3) whether the witnesses and documents necessary at trial are the

same . . .; and (4) whether the *material* facts alleged are the same."  *United States v.

Athlone Indus., Inc.*, 746 F.2d 977, 984 (3d Cir. 1984) (internal citations omitted).  "It is not

dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the

two actions."  *Sheridan*, 609 F.3d at 261.

Here, the above-captioned case presents an essentially identical cause of action to

Plaintiffs' prior suit in state court.  In the previous suit, Plaintiffs alleged that Defendants

violated their Eighth Amendment rights as follows:

> [Plaintiffs] assert claims for both failure to prevent harm and inadequate
> medical care.  All of their claims arise out of the same set of operative facts:
> each Plaintiff is incarcerated at SCI Huntingdon, each has been exposed to
> the SARS-CoV-2 virus while incarcerated, and each has suffered a COVID-19
> infection as a result.  Plaintiffs generally assert that due to age and lack of
> maintenance and modernization the SCI Huntingdon facility does not allow for
> proper COVID-19 infection control and prevention measures (insufficient
> social distancing, ventilation, and personal hygiene facilities), that Defendants
> knew of such issues and did not take steps to address them, and that when
> Plaintiffs suffered COVID-19 infections as a result of such issues, Defendants
> did not provide the medical care necessary to treat them.

(Doc. 53-1, pp. 2-3).  In the instant suit, Plaintiffs again maintain that Defendants violated

their Eighth Amendment right to receive adequate medical care and their right to adequate

conditions of confinement at SCI-Huntingdon.  (Doc. 36).  Upon consideration of the two

lawsuits, it is clear that they arise out of the same set of facts: Defendants' provision of

medical care for Plaintiffs and the housing conditions at SCI-Huntingdon during the COVID-

19 pandemic.  Additionally, both lawsuits seek the same claim for relief.

In sum, the state court previously concluded that Defendants Wetzel, Kauffman,

Kohler, Walters, Spyker, Price, Scalia, Powell, and Houp were not deliberately indifferent to

Plaintiffs' Eighth Amendment needs because "Defendants took steps both to address the

risk of the SARS-CoV-2 virus entering SCI Huntingdon and to treat inmates who suffered

COVID-19 infections."  (Doc. 53-1, p. 3).  Plaintiffs, therefore, are precluded from relitigating

their Eighth Amendment claims.  Moreover, Plaintiffs are barred from litigating their claims

against Defendants Loy, Ralston, Yost, and House because of their privity with Defendants

Wetzel, Kauffman, Kohler, Walters, Spyker, Price, Scalia, Powell, and Houp.  The Court

finds that Plaintiffs' present claims are barred based upon the doctrine of *res judicata*.

Nonetheless, the Court will proceed to address the merits of Plaintiffs' claims.

B.     **Failure to State an Eighth Amendment Claim for Relief**

Defendants seek dismissal of Plaintiffs' amended complaint on the basis that they

have not pled plausible Eighth Amendment claims against them.  The Eighth Amendment

prohibits the infliction of cruel and unusual punishment on prisoners.  *See Wharton v.*

*Danberg*, 854 F.3d 234, 247 (3d Cir. 2017).  There are several types of Eighth Amendment

claims, including claims alleging: denial of, or inadequate access to, medical care; exposure

to adverse conditions of confinement; the use of excessive force; and failure to protect from

assaults by other inmates.  An Eighth Amendment claim includes both objective and

subjective components.  *See Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  Under the

objective prong, the Court must consider "if the alleged wrongdoing was objectively 'harmful

enough' to establish a constitutional violation."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)

(quoting *Wilson*, 501 U.S. at 298).  However, "[w]hat is necessary to show sufficient harm

for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at

issue."  *Id.*  The subjective component is met if the person or persons causing the

deprivation acted with "a sufficiently culpable state of mind."  *Wilson*, 501 U.S. at 298.

### 1.   *Conditions of Confinement Claim*

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must

establish that: "(1) he was incarcerated under conditions imposing a substantial risk of

serious harm, (2) the defendant-official was deliberately indifferent to that substantial risk to

his health and safety, and (3) the defendant-official's deliberate indifference caused him

harm."  *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015).  "[T]he Constitution does not

mandate comfortable prisons."  *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981).  Therefore,

conditions of imprisonment violate the Eighth Amendment only if they, "alone or in

combination . . . deprive inmates of the minimal civilized measures of life's necessities."

*See id.* at 347.  Such necessities include "adequate food, clothing, shelter, and medical

care."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Thus, "extreme deprivations are

required to make out a conditions-of-confinement claim."  *Hudson*, 503 U.S. at 9.  However,

"[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson*, 501 U.S. at 304 and *Rhodes*, 452 U.S. at 347).

Plaintiffs have failed to establish that the current conditions at SCI-Huntingdon amount to unconstitutional punishment.  As previously recognized, "the prison setting raises unique concerns regarding the spread of the COVID-19 virus since, by their very nature, prisons are confined spaces unsuited for social distancing." *Rodriguez-Francisco v. White*, No. 1:20-CV-1076, 2020 WL 4260766, at *3 (M.D. Pa. July 24, 2020).  However, the "inability to practice social distancing is not, in and of itself, sufficiently serious to implicate a violation of the Eighth Amendment." *Id.*

There is no indication that SCI-Huntingdon is not complying with the modified parameters of operation set forth *supra*.  The measures taken by the facility indicate that Plaintiffs' conditions of confinement are not unconstitutionally overcrowded or unsanitary.  Instead, they have been effective at curbing the introduction or spread of COVID-19 at SCI-Huntingdon.  SCI-Huntingdon has been testing for the COVID-19 virus.  As of February 11, 2022, 3,049 inmates have been tested, with 422 positive results.  *See* COVID-19 and the DOC, https://www.cor.pa.gov/PAges/COVID-19.aspx (select "COVID-19 Dashboard" hyperlink and search for SCI-Huntingdon) (last accessed Feb. 11, 2022).  Staff members

have also been tested, with 437 testing positive. *Id.* Finally, as of February 11, 2022, 1,451 inmates and 232 staff members at SCI-Huntingdon have been fully vaccinated. *Id.* In light of the strict measures taken by the DOC to curb the spread of COVID-19, Plaintiffs have failed to identify a sufficiently serious deprivation that rises to the level of an Eighth Amendment violation.

### 2.   *Deliberate Indifference to Serious Medical Needs*

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). To establish an Eighth Amendment claim based on a prison's denial of medical care, an inmate must allege acts or omissions by prison officials that were sufficiently harmful to establish deliberate indifference to a serious medical need. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004); *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003). The relevant inquiry is whether the defendant: (1) was subjectively deliberately indifferent (2) to the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 834, 837; *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015).

The "deliberate indifference" prong of the applicable Eighth Amendment analysis requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Circumstantial evidence can establish subjective knowledge on the part of the defendant if it shows that the excessive risk was so

obvious that the official must have known about it.  *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842).  The Third Circuit has found deliberate indifference when a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  *Rouse*, 182 F.3d at 197.

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Not every condition is a serious medical need; instead, the serious medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain.  *See id.*

Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation.  *White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[M]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  The Supreme Court has held that negligence or inadvertence alone do not rise to the level of a constitutional violation.  *Whitley v. Albers*, 475 U.S. 312 (1986).  The Supreme Court has also noted that "[l]ack of due care suggests no more than a failure to

18

measure up to the conduct of a reasonable person." *Daniels v. Williams*, 474 U.S. 327, 332 (1986). Where a state of mind is relevant, the complaint is inadequate if it merely contains conclusory allegations describing the requisite state of mind such as "intentionally" or "recklessly" without supporting factual allegations. *Wilson*, 501 U.S. 294. Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. *See White*, 897 F.2d at 108-10.

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. *See Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *Pearson v. Prison Health Servs.*, 850 F.3d 528, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

Defendants maintain that Plaintiffs' inadequate medical care claims against them are subject to dismissal because they amount to mere disagreements with medical treatment and because they have failed to allege that Defendants were deliberately indifferent to their needs. (Doc. 53, pp. 11-12). Both Plaintiffs acknowledge that they received medical care after reporting symptoms similar to COVID-19. Additionally, Plaintiff Pearson was promptly

19

provided a COVID-19 test, placed into quarantine in the gymnasium, and underwent monitoring until his release back to general population. While COVID-19 certainly presents a serious medical issue, as noted *supra*, the DOC and SCI-Huntingdon have taken significant steps to curb the introduction or spread of COVID-19 and to contain and treat those who may become infected with the virus. Construing the allegations in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have failed to establish that the prison's response to the COVID-19 pandemic has exacerbated their health conditions and they have failed to allege an adequate Eighth Amendment medical care claim against Defendants. *See Hope v. Warden York Cty. Prison*, 972 F.3d 310, 330 (3d Cir. 2020) (noting that "a failure to eliminate all risk [does not] establish that the Government [has been] deliberately indifferent to [inmates'] serious medical needs"). Because Plaintiffs have failed to identify any official conduct that exhibits deliberate indifference to their health or safety, they are not entitled to relief on this claim.

### C.   Claims Pursuant to the Pennsylvania Constitution

Plaintiffs also seek damages based on Defendants' alleged violations of their "right[] not to be subjected and/or undergo cruel and unusual punishments under Article I, section 13 of the Pennsylvania Constitution." (Doc. 36, pp. 33-34). As the Third Circuit has recognized, however, "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution." *Pocono Mtn. Charter Sch. v. Pocono Mtn. Sch. Dist.*, 442 F. App'x 681, 687

(3d Cir. 2011). Accordingly, the Court will dismiss Plaintiffs' claims pursuant to the Pennsylvania Constitution.

## IV.   Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, Plaintiffs' claims are legally and factually flawed; thus, the Court concludes that granting Plaintiffs leave to file a second amended complaint would be futile. *See Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (where inmate plaintiff "has already had two chances to tell his story . . . giving him further leave to amend would be futile.")

## V.  <u>Conclusion</u>

The Court will grant Defendants' motion (Doc. 52) to dismiss.  A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: February ___11th___, 2022